IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KYAI GIBSON, | ) |
| | ) |
|                   Plaintiff, | ) |
| | ) |
| vs. | )    Case No. 25-cv-1364-DWD |
| | ) |
| DARREN GALLOWAY, | ) |
| JANE DOE, | ) |
| JOHN DOE, | ) |
| WEXFORD HEALTH SOURCES, | ) |
| | ) |
|                   Defendants. | ) |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Kyai Gibson, a former inmate[1] of the Illinois Department of Corrections (IDOC), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a

---

[1] At the time that Plaintiff submitted his complaint for filing on July 14, 2025, he was still incarcerated and included a return address of the prison (Doc. 1 at 8), however, with the Complaint he also included a note stating that he would be paroled on July 9, 2025 (Doc. 1 at 10). By the time the Court received the complaint in the mail, it was July 14, 2025. The Court assumes that Plaintiff submitted his complaint to the prison mail system for filing on the date that he signed it (June 25, 2025), so under the prison mailbox rule, it will treat the complaint as having been filed while he was still an inmate. *See e.g., Ingram v. Jones*, 507 F.3d 640, 643 (7th Cir. 2007) (the prisoner mailbox rule provides that a document filed by a prisoner is deemed filed on the date he places it in the prison mail system, and not on the date when it is received by the Clerk of Court).

defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## ANALYSIS

Plaintiff alleges that upon arrival at Shawnee Correctional Center (Shawnee) in April of 2024, he informed a nurse in the healthcare unit that he had a mass growing in his leg. He reported sudden excruciating pain and indicated in the past he had a problem with masses in his leg. (Doc. 1 at 5). He claims that months passed, and he submitted multiple sick call slips before he was eventually called to the medical unit by "staff" for an x-ray. He informed staff that he needed an MRI, but his request was refused. Plaintiff alleges that the nurse told him the doctor would not see him because his situation was not serious. (Doc. 1 at 6). Treatment stopped. (Doc. 1 at 5).

While on a court writ in Glenview, Illinois, Plaintiff complained about the mass and was taken to a hospital for an MRI. The MRI revealed an 11.5cm tumor/mass, for which he was referred to an orthopedic oncologist for a biopsy. However, before the biopsy took place he was transferred back to Shawnee. (Doc. 1 at 6). Plaintiff brought a copy of the MRI results and eventually was seen by the doctor in March of 2025. He alleges the doctor disregarded the MRI results and sent him to see a cosmetic surgeon in Carbondale, Illinois. The cosmetic surgery office was confused by the referral and was unable to offer any care. Plaintiff alleges that the nurse downplayed his needs in April of 2024 and denied him care despite knowing his history of problems. (Doc. 1 at 6). He further alleges that the doctor was deliberately indifferent to his issue by signing off on

the x-ray in April without seeing him. (Doc. 1 at 7). Plaintiff alleges that as a result of the lack of care, he now requires a cane to ambulate because his leg is massively swollen and painful.

Plaintiff alleges that Defendant Galloway is "full[y] aware of his medical staff's neglect of prisoners medical needs," and does not intervene. (Doc. 1 at 7). He further alleges that Galloway was the warden at the time his medical issues arose. Plaintiff seeks monetary damages, although he does not specify an amount.

Based on the allegations in the Complaint, the Court will designate the following claims:

> **Claim 1:** **Eighth Amendment deliberate indifference claim against Defendant Jane Doe nurse for delaying or denying Plaintiff adequate care for the mass in his leg beginning in April of 2024;**
>
> **Claim 2:** **Eighth Amendment deliberate indifference claim against Defendant John Doe doctor for initially failing to examine or treat Plaintiff's situation when he had an x-ray, or departing from recommended care in March of 2025;**
>
> **Claim 3:** **Eighth Amendment deliberate indifference claim against Defendant Galloway for allegedly allowing inadequate medical care to persist at Shawnee.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Preliminary Dismissal

Plaintiff named Wexford Health Sources as a defendant, but he has no allegations against Wexford in the body of the complaint. Naming a defendant without describing their role is insufficient to state a claim. *Black v. Lane*, 22 F.3d 1395, 1401 at n.8 (7th Cir. 1994). Wexford may be held liable for a constitutional harm caused by: (1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority. *See e.g., Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021). "In applying *Monell* and avoiding *respondeat superior* liability, one key is to distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Id.* at 654. One key to pleading and proving a *Monell* claim against Wexford is that a Plaintiff establish a causal link between the alleged policy and the harm he sustained. Without any allegations about Wexford, this defendant will be dismissed without prejudice.

## Analysis

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component. *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010). A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard). *Id.* To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to

deliberate indifference. *Id.* Additionally, an inmate is not entitled to demand specific care, and a medical professional may choose from a range of acceptable courses of care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).

Plaintiff's allegations against the Jane Doe nurse and John Doe doctor present a close call. Although inmates are not entitled to demand specific care, Plaintiff alleges that when he informed the nurse of the mass in his leg in April of 2024, he also told her he had previous issues with masses/tumors in his leg and that the condition was extremely painful. He alleges that despite this report, the nurse did nothing, and he had to wait months for an x-ray. On the one hand, if the nurse did nothing with his reported issue, that could be deliberate indifference, but on the other hand if she was not responsible for scheduling or if she attempted to make a referral for him, she may not be liable for deliberate indifference. As for the doctor, Plaintiff faults him both for failing to personally assess Plaintiff's condition after the x-ray and for failing to follow the recommendations from the MRI in March of 2025. Again, an inmate cannot demand specific care, but here he is alleging either that the doctor acted below the standard of reasonable care or refused to follow the MRI recommendation. Evidence that a prison doctor refused to take instructions from a specialist can be a hint that the doctor departed from a reasonable standard of care. *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016). At this early stage of review, Plaintiff's allegations are sufficient to proceed, but ultimately this claim will likely turn on highly nuanced facts and evidence as developed by the parties. For now, Claims 1 and 2 are sufficient to proceed.

By contrast, Claim 3 against Defendant Galloway is insufficient to proceed because Plaintiff does not plausibly suggest that Galloway personally knew about his medical situation and refused help. High-level prison officials cannot be held liable under § 1983 purely by way of having authority over daily prison functions. *See e.g.*, *Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009) (the warden of a prison is entitled to relegate the provision of medical care to the prison's medical staff). Instead, a Plaintiff must at least allege that the prison official has been alerted to his personal peril and failed to act. *See e.g.*, *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015) (an inmate's highly detailed correspondence to a prison administrator may establish a basis for personal liability under § 1983). Here, Plaintiff has not alleged that he contacted Galloway about his situation, so his claim against Galloway will be dismissed as insufficiently pled.

Despite the claim against Galloway being dismissed, Galloway shall remain in this case in his individual capacity only solely for the purpose of John Doe identification. Plaintiff must file a Notice within 21 days giving as much descriptive information as possible about Jane Doe nurse and John Doe doctor. The Court will then set a deadline for Galloway to provide responsive information.

## Motion to Proceed In Forma Pauperis

Along with the Complaint, Plaintiff submitted an application to proceed In Forma Pauperis (IFP). The application included a trust fund statement, which reflects that under the statutory formula, Plaintiff's initial payment would have been $101.01. The filing fee attaches at the time a case is filed, and as explained in footnote 1, Plaintiff was incarcerated when he filed and thus was obligated under 28 U.S.C. § 1915(b)(1) to pay an

initial partial fee. *See Robbins v. Switzer*, 104 F.3d 895, 898-99 (7th Cir. 1997) (explaining that an inmate who filed appeals and sought IFP status while incarcerated, and then was later released, was still required to supply trust fund documentation and to pay the fee that would have been financially appropriate at the time he filed the appeal and applied for pauper status, and if he refused to pay or failed to supply the trust fund documents, dismissal of his case for failure to pay would be appropriate). Therefore, Plaintiff must pay a filing fee of $101.01 if he wishes to proceed with this case. Plaintiff shall have 30 days to pay the filing fee, failing which this case may be dismissed for non-payment.

## Disposition

**IT IS HEREBY ORDERED THAT Claims 1 and 2** of the Complaint (Doc. 1) survive against Defendants Jane Doe and John Doe. By contrast, Claim 3 is insufficient against Galloway in his individual capacity, and there is no adequate claim alleged against Wexford. The Clerk of Court shall **TERMINATE** Wexford Health Sources because there is no sufficient claim pled against them. Galloway shall remain in his official capacity only to help identify John and Jane Doe.

The Clerk of Court is **DIRECTED** to prepare for Defendant Darren Galloway (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service

on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

Plaintiff must **file a Notice within 21 days** giving as much identifying information as possible about Jane Doe and John Doe.  Galloway will then be given a deadline to respond.  Plaintiff must also **pay his $101.01 filing fee within 30 days**, or this case will be dismissed.

**IT IS SO ORDERED.**

Dated: September 29, 2025                                   /s *David W. Dugan*

                                                                            _____
                                                                            DAVID W. DUGAN
                                                                            United States District Judge

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.